Gross and another, Respondents, vs. Gross, Administrator, and others, imp., Appellants.

*September 3 — September 22, 1896.*

(1) *Fraudulent conveyances: Validity between parties.*  (2) *Evidence: Immaterial error.*  (3) *Judgment: Incidental relief.*

1. Transfers and conveyances made with intent to hinder, delay, or defraud creditors, though void as against such creditors, under sec. 2320, R. S., are nevertheless valid as between the parties.
2. The improper admission of evidence is not a ground for reversal in an equity case.
3. In an action to establish plaintiffs' right to the possession of land under an agreement for a lease executed by one, since deceased, under whom the several defendants claimed, adversely to each other, the ownership or right to the possession of the land, an adjudication as to such ownership was proper, being incidental to the relief granted to the plaintiffs.

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

This action was commenced March 26, 1895. The com-

plaint alleges, in effect, that the plaintiffs, *Laura* and *Rosa Gross,* claim the right to the plant, fixtures, and stock on hand of a soap factory described, the personal property under a bill of sale executed by Leopold Gross, August 17, 1893, and the real estate under an agreement in writing executed by Leopold Gross on that day, wherein and whereby he agreed to execute and deliver to the plaintiffs or their assigns a lease for the purpose of carrying on the soap manufacturing business thereon, for a rental of $15 per week, said lease to be for the term of one year, with the right on the part of the plaintiffs to hold the same under said lease, at the rate aforesaid, for an additional term of ten years; that prior to August 17, 1893, the said Leopold had purchased all of said property at sheriff's sale on process against the defendants Bernhard and Jacob Gross; that, immediately upon such execution of the bill of sale and written agreement by Leopold Gross, the plaintiffs went into the possession of said real estate and personal property, and began and continued the manufacture of soap thereon; that October 21, 1893, the said Leopold Gross died, testate; that his will was duly admitted to probate; that defendant *Joseph Gross* was duly appointed administrator of the estate of the said Leopold; that in and by the will the said Leopold devised and bequeathed his property generally, without describing the same, to his wife, the defendant *Catherine Gross;* that October 27, 1893, the defendant city of Milwaukee unlawfully and wrongfully entered upon and took and appropriated to its own use a portion of said real estate described, for the purpose of constructing a bridge or viaduct thereon, without any compensation; that December 12, 1893, October 30, 1894, and March 21, 1895, the defendant *Catherine Gross* executed and delivered to the defendant *Sarah Singer* warranty deeds of three several portions of said premises, and which deeds were recorded June 13, 1894, and March 22, 1895; that the defendants Bernhard and Jacob Gross claim

to be the owners in fee of all of said lands, and to have been such owners at the times mentioned; that the defendant *Joseph Gross* claims to be entitled to all of said personal property, the possession of all of said lands, and the damages against the city of Milwaukee, as such administrator; that the defendant *Sarah Singer* claims to be the owner of the portions of said lands under the deeds aforesaid, and also to be the owner of such damages against the city; that the defendant *Joseph Gross* was then in possession of the personal and real property aforesaid, with a large body of men, holding the same with force and arms, having expelled the plaintiffs therefrom March 25, 1895. Wherefore the plaintiffs prayed judgment that a receiver be appointed during the pendency of this action to carry on the business, to take and hold possession of the property for the benefit of whosoever may be entitled thereto; that the title of the plaintiffs to the personal property, and possession of the real estate under said agreement for a lease, be quieted and established, and the defendants and all persons claiming under them be enjoined and restrained from in any wise interfering therewith.

Separate answers to the said complaint were put in by the defendant *Joseph Gross*, as such administrator, claiming to be such owner; by the defendants Bernhard and Jacob Gross, claiming to be such owners; by the defendant *Catherine Gross*, claiming to be such devisee and legatee, with right to so sell and convey; and by *Sarah Singer*, claiming to be owner under such conveyances.

At the close of the trial the court found as matters of fact, in effect, that for more than ten years prior to July 25, 1893, the defendants Bernhard and Jacob Gross were engaged as partners, under the firm name of Gross Brothers, in the manufacturing and sale of soap in the soap factory in question; that the said Leopold and *Catherine* were husband and wife, and the said Bernhard, Jacob, *Joseph*, and *Sarah*

were their children, and the said *Laura* was the wife of said Bernhard, and the said *Rosa* was the wife of said Jacob; that in July, 1893, the firm of Gross Brothers, composed of the said Bernhard and Jacob, was indebted to various persons, and at the same time held, and had for some time held, the real estate in question in such way that the apparent legal title of record was in Leopold, but in fact in Bernhard and Jacob, who held title thereto by an unrecorded deed, executed and delivered to them by Leopold and *Catherine*, February 10, 1888, which deed was duly executed and acknowledged, but never recorded, and which conveyed to Bernhard and Jacob Gross the lands in question; that in July, 1893, judgments were confessed by Bernhard and Jacob Gross to Leopold, one for $3,682.20, and the other for $17,332.20; that Bernhard and Jacob caused execution thereon to be issued to the sheriff, and against the property of Gross Brothers, consisting of said soap factory, the machinery and utensils for the manufacture of soap, and the stock manufactured and partly manufactured, and the material for such manufacture, to be levied upon under such executions, and advertised for sale, and sold; that certain creditors of the firm made a levy on the same goods, and intervened in said action of Leopold against Bernhard and Jacob Gross, so that it became necessary that cash should accompany any bid made on such execution sales; that said goods so seized and levied on were, August 14, 1893, bid off in the name of Leopold Gross for $4,080, which sum was then and there furnished and paid into court by the plaintiffs for whosoever might be entitled thereto; that the title of record of said land and the ownership of said personal property appeared to be in Leopold after said sheriff's sale, but no change was made in the possession or control of said property, except that the manufacture of soap thereon was carried on under the name of Leopold Gross; that August 17, 1893, Leopold executed, and caused to be delivered to

the plaintiffs, the bill of sale of the personal property as mentioned in the complaint; that thereafter the title was apparently in the name of Leopold up to the time of his death, and since in *Joseph*, as his administrator, but the possession was really held by them as the agents of Bernhard and Jacob Gross; that Leopold did not at the time of his death own either said personal property or said real estate, except the life estate so reserved in the deed of February 10, 1888, and that at the time of the appointment of *Joseph* as such administrator he knew that Leopold did not own said real estate or personal property, or any part thereof; that March 25, 1895, Bernhard and Jacob Gross executed and delivered to the plaintiffs an agreement in and by which they bound themselves to execute and deliver to the plaintiffs a lease of the lands aforesaid, substantially as set forth in the complaint, and that the rental of $15 per week, reserved in said lease or agreement for a lease, should be paid to or for the use of said *Catherine;* that each of the three several deeds executed by the said *Catherine* to the said *Sarah Singer*, mentioned in the complaint, were voluntary conveyances, without any consideration, and executed by *Catherine* and taken by *Sarah* with knowledge and notice of the rights of the plaintiffs and of all parties to this action; that *Catherine* had no title; and that the deeds were and are clouds upon the title of the plaintiffs and the defendants Bernhard and Jacob Gross.

As conclusions of law, the court found, in effect, that the plaintiffs are the owners of the said personal property, and are entitled to an injunction against all the other defendants, enjoining and restraining them from interfering with the same; that Bernhard and Jacob Gross are the owners of the real estate aforesaid, and of all claims for damages growing out of any taking by the city, subject to the life interest of *Catherine* in and to the portions thereof described; that the plaintiffs are entitled to have executed to them, by Bern-

hard and Jacob Gross, a lease of all the lands mentioned, subject to the life estate of *Catherine*, at a rental of $15 per week, payable weekly to *Catherine*, during her life, personally; that the three deeds from *Catherine* to *Sarah*, with the assignment aforesaid in one of them, be canceled, set aside, and held for naught; that the plaintiffs are entitled to judgment against all the defendants for the relief aforesaid, and for their costs and disbursements, and the receiver herein is ordered to forthwith file his account and deliver the possession of the property to the plaintiffs, and, upon the approval of his account, the receiver shall be discharged from further duty or liability; and it was therein ordered that judgment be entered accordingly. From the judgment entered thereon accordingly the defendants *Joseph Gross*, as administrator, etc., and *Catherine Gross* and *Sarah Singer* appeal.

In disposing of the case, Judge LUDWIG, before whom it was tried, among other things, said: "There is one thing I am satisfied of in this case, and it is a matter upon which turns a good deal of the opinion I take in the matter, and that is this: I am convinced from all this testimony introduced in this case that whenever the Gross brothers, Bernhard and Jacob, were about to enter into some financial undertaking, the first thing they did was to shield themselves against their creditors if that financial undertaking should prove a bad one. I am almost satisfied from everything I have heard and seen in this case that, whenever there was a financial failure (as the evidence shows there was at least one), the intention of the Gross brothers was to conceal as much property as posssible from their creditors. Those two facts run through all this case like a red line, and, in considering this testimony and all the evidence introduced in the case, I consider it, I must confess, in the light of that red line. I will further say, from what I can see in this case, the old gentleman, Leopold Gross, was always very

accommodating to his sons in assisting them in attaining those objects and purposes. So far as the question of the validity of those instruments is concerned, I have no doubt that the deed of February 10, 1888, is genuine. I do not doubt the genuineness of any instrument offered in this case in evidence, except that I had considerable doubt, and I have some doubt yet, whether the signature to the bill of sale and promissory lease is genuine. However, taking into consideration all the facts and circumstances proven in this case, I think it was only a matter following in the natural line of circumstances, and in the natural line of the doings of these parties, that such a bill of sale would have been signed. For that reason, I have given the benefit of the doubt in favor of the plaintiffs, who claim under it. There is no question in my mind that all these parties were acting in concert at the time when this sheriff's execution was taken out and levy made upon the property, and that they were all in concert, including *Joseph Gross* and everybody else, while the sheriff was in there and while the property was in the custody of *Joseph*, so acting as administrator, either temporarily or as permanent administrator; and, in fact, the possession of the property never changed. If this action was brought by creditors, I think the testimony would have to be looked at in a different light than as a court would be constrained to look at it in a fight between these parties. I am satisfied that there was really never a change of possession. It was a preconcerted arrangement and understanding that this administrator was simply there as a functionary, acting for and in behalf of this scheme which was to be carried out; and I think that, under these circumstances, I would doubt very much whether a bill of sale was absolutely necessary. But, inasmuch as there is a bill of sale, I will cast my doubt in favor of the bill of sale, because it was a natural thing to follow in the course of

these arrangements between the parties as they conclusively appear from all the evidence. So that, taking this altogether, all these instruments I judge to be genuine."

For the appellants there was a brief by *Williams & May*, and oral argument by *A. B. May*. They contended, *inter alia*, that it was error to give any relief to Bernhard and Jacob Gross, because they had pleaded no counterclaim.

For the respondents there was a brief by *Timlin & Glicksman*, and oral argument by *W. H. Timlin*.

For the defendants Bernhard and Jacob Gross there was a brief by *Hugh Ryan*. He argued that the adjudication of the adverse claims of the defendants was proper, the question having been litigated and decided on its merits, and the relief granted being connected with, or necessary to, the relief given to the plaintiffs. *Elliott v. Pell*, 1 Paige, 268; *Chamley v. Lord Dunsany*, 2 Sch. & L. 710, 718; *Conry v. Caulfield*, 2 Ball & B. 255; *Corcoran v. C. & O. Canal Co.* 94 U. S. 741; *Louis v. Brown Tp.* 109 id. 162.

CASSODAY, C. J. The principal question here involved is whether the findings of fact are contrary to the clear preponderance of the evidence. The real contest in the trial court as to the real estate was whether the title was in Leopold Gross at the time of his death, as it appeared to be by the public records, or whether he and his wife had, nearly six years before, conveyed the same to Bernhard and Jacob Gross, by deed bearing date February 10, 1888, but which had not been recorded. If it was so conveyed, as found by the trial court, then it is obvious that *Catherine* acquired no title by virtue of the devise in Leopold's will; and hence she conveyed no title to her daughter, *Mrs. Singer*, by the deeds she gave. If the legal title to the land was vested in Bernhard and Jacob Gross by virtue of the deed of February 10, 1888, then "the occupation of such premises" by any other persons between that time and the death of Leopold,

October 23, 1893, must "be deemed to have been under and in subordination to the legal title" so acquired, unless it appears that such occupancy and possession was adverse to such legal title. R. S. sec. 4210; *Schwallback v. C., M. & St. P. R. Co.* 69 Wis. 292; *S. C.* 73 Wis. 137; *Hacker v. Horlemus,* 74 Wis. 21; *Nau v. Brunette,* 79 Wis. 672. There is no claim that the deed of February 10, 1888, does not, upon its face, appear to be under seal, and in proper form, and duly witnessed and acknowledged, so as to entitle the same to be recorded. The real contest in the trial court as to the personal property was as to whether the plaintiffs advanced the amount of the bid, $4,080, on the sheriff's sale, and thereupon took a bill of sale thereof from Leopold, as found by the trial court. If the title of the personal property did pass to the plaintiffs by such bill of sale, as found by the trial court, then, obviously, neither *Catherine,* as such legatee, nor *Joseph,* as such administrator, acquired any right thereto by virtue of the will.

The execution and delivery of the bill of sale, and the execution and delivery of the deed of February 10, 1888, were sharply contested in the trial court; and all the findings of fact were in favor of the plaintiffs. The learned trial judge carefully expressed his opinion in writing upon the subject, and the same is embraced in the foregoing statement. We fully approve of what he there says on the subject, and so it is unnecessary to repeat what is there said. As indicated in that opinion, the rights of creditors of any of the parties are not here involved. Although the transfers and conveyances may have been made with the intent to hinder, delay, or defraud creditors, and hence void as against such creditors, under the statute, nevertheless they were valid as between the parties. R. S. sec. 2320; *Clemens v. Clemens,* 28 Wis. 637; *Dietrich v. Koch,* 35 Wis. 618; *Davy v. Kelley,* 66 Wis. 452; *Weber v. Weber,* 90 Wis. 467.

The improper admission of evidence is not a ground of re-

versal in an equity case. The respective parties claim under the deceased. This being so, evidence of any transaction between the deceased and either of such parties was properly excluded.

The relief given to Bernhard and Jacob was incidental to the relief granted to the plaintiffs. The findings of the court are, as we think, sustained by the evidence. Upon the facts found, it is obvious that *Joseph* acquired no interest in the property under the will, as administrator or otherwise. Numerous errors are assigned, but they are all disposed of by the findings of the court and what has been said.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.